UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/20/2020

Andre Royal,

                    Plaintiff,

         –v–

Retirement Board of the Bert Bell/Pete Rozelle NFL Player
Retirement Plan, *et al.*,

                    Defendants.

19-cv-5164 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Andre Royal developed seizures while playing football for the National Football League.

He retired midway through his contract with Indianapolis Colts in the year 2000 and applied for

disability benefits under the retirement plan for NFL players.  The plan administrator classified

him as totally and permanently disabled, and he has received disability benefits since 2001.  In

May 2015, he unsuccessfully sought reclassification into a different category of total and

permanent disability that he alleges would have resulted in greater benefits.  In June 2019, he

sued, alleging that the plan administrator had failed to furnish him with a summary plan

description written in a manner calculated to be understood by the average plan participant, as

required by § 102(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 88

Stat. 829, 841, 29 U.S.C. § 1022(a).

The Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan (the

plan administrator) and several of its members (collectively, "the Board") move to dismiss.  The

Court agrees with the Board that Royal's claims are time-barred.  The Court thus grants the

motion and dismisses all claims with prejudice.

I.      **Background**

For purposes of this motion, the Court takes as true all factual allegations in Royal's

Amended Complaint ("FAC"), Dkt. No. 15, and draws all reasonable inferences in his favor.

Royal played football for the NFL for five seasons from 1995 to 2000.  FAC ¶ 18.  In his

third year, he developed petit mal seizures, which he attributes to head injuries suffered during

play.  *Id.* ¶ 40.  His seizures worsened over the next two years, and he started to suffer

migraines, confusion, and other symptoms.  *Id.*  He retired in 2000, two years into a four-year

contract.  *Id.*

Like other NFL players at the time, Royal was a participant in the 1995 Bert Bell/Pete

Rozelle NFL Player Retirement Plan.  *Id.* ¶ 41; *see* Declaration of Michael L. Junk, Ex. C

("1995 Plan"), Dkt. No. 16-5.  The 1995 Plan provided the highest benefits to those who were

totally and permanently disabled.  Within that designation, there were four categories of total

and permanent disability.  *See* 1995 Plan at 21–22; Declaration of Michael L. Junk, Ex. D

("1999 SPD"), Dkt. No. 16-6, at 11.  Two are relevant here: "active football," meaning that the

disability arose out of league activities and the player became totally and permanently disabled

shortly after his disability arose; and "football degenerative," meaning that the disability arose

out of league activities but the player did not become totally and permanently disabled shortly

after his disability arose.  Both categories had a minimum disability benefit of $4,000.  *See* 1995

Plan at 21–22; 1999 SPD at 11.

Royal requested an application for disability benefits under the 1995 Plan around the time

he retired.  FAC ¶ 41.  The Board sent him an application, along with a two letters saying that

he would receive a copy of the plan.  *Id.*; *see* Declaration of Robert C. Hilliard, Ex. 2, Dkt. No.

29-3.  He never received a copy of the plan.  FAC ¶ 41.  Royal successfully applied for total and

permanent disability benefits in the football degenerative category, with a gross monthly benefit of approximately $4,000. *Id.* ¶¶ 43–44.

In May 2015, Royal filed an application for reclassification from football degenerative to active football. *Id.* ¶ 47. The Board denied his application the next month, reasoning that he had not demonstrated by clear and convincing evidence that he was entitled to reclassification because of changed circumstances. *Id.* ¶ 48. It denied his appeal on the same grounds in December 2015. *Id.* ¶ 50; *see* Declaration of Michael L. Junk, Ex. F, Dkt. No. 16-8. Royal did not seek judicial review of the Board's decisions on his initial application for benefits or his application for reclassification.

In June 2019, Royal brought this suit against the Board, the National Football League Players Association, and the National Football League Management Council. *See* Dkt. No. 1. After the Board moved to dismiss, the Court allowed Royal the opportunity to amend his complaint to attempt to address any defect made apparent by the Board's motion, and Royal did so. *See* Dkt. Nos. 12, 14, 15. Royal voluntarily dismissed his claims against the Players Association and Management Council. *See* Dkt. No. 50.

Royal's amended complaint asserts four claims against the Board; however, he defends only two of them in his opposition to the Board's motion to dismiss: (1) failure to provide a summary plan description ("SPD") written in a manner calculated to be understood by the average plan participant, in violation of § 102(a) of ERISA; and (2) breach of fiduciary duty for failing to disclose the meaning of the plan's terms, in violation of § 404(a) of ERISA. That is, both of his live claims essentially relate to the Board's alleged failure to provide a satisfactory SPD.

The Board's motion to dismiss contends that Royal lacks Article III standing, that his claims are time-barred, and that the SPD complied with ERISA's requirements. The Court finds that Royal has standing but agrees with the Board that his claims are time-barred.

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Litwin v. Blackstone Grp.*, L.P., 634 F.3d 706, 715 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When determining whether a complaint states a claim, a court accepts as true all allegations in the complaint and draws all reasonable inferences in favor of the non-moving party. *Id.* A Court may also consider documents that are integral to a plaintiff's claims—like plan documents in an ERISA case—whether or not attached to the complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *see, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A defendant may raise the affirmative defense that a claim is time-barred in a motion to dismiss if that defense appears on the face of the complaint. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

"Federal courts 'are courts of limited jurisdiction whose power is limited strictly.'" *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 64 (2d Cir. 2012) (quoting *Ahmed v. Holder*, 624 F.3d 150, 154 (2d Cir. 2010)). At each stage of litigation, "'[t]he party invoking federal jurisdiction bears the burden of establishing the[] elements' of

Article III standing."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)

(alterations in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  [F]actual

allegations of injury resulting from the defendant's conduct may suffice" to meet this burden at

the pleading stage.  *Id.* (quoting *Lujan*, 504 U.S. at 561.  A district court must dismiss an action

at any time if it determines it lacks subject matter jurisdiction.  Fed. R. Civ. P. § 12(h)(3); *see*

*Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013).

## III.     Discussion

### A.     Royal Has Standing

"Article III confines constitutional standing to plaintiffs who can establish that they have

suffered some injury-in-fact."  *Kendall v. Employees Ret. Plan of Avon Prod.*, 561 F.3d 112, 118

(2d Cir. 2009) (citing *Lujan*, 504 U.S. at 560).  "To qualify as a constitutionally sufficient injury-

in-fact, the asserted injury must be concrete and particularized as well as actual or imminent, not

conjectural or hypothetical."  *Id.* (quoting *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003).

"[A] bare procedural violation" is not enough.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550

(2016).  However, Congress may by statute identify intangible harms as satisfying Article III's

requirements where those harms are of a type historically understood as providing for the basis

of a lawsuit.  *Id.*; *Lujan*, 504 U.S. at 578; *see also Warth v. Seldin*, 422 U.S. 490, 500 (1975)

("The actual or threatened injury required by Art. III may exist solely by virtue of statutes

creating legal rights, the invasion of which creates standing." (cleaned up)).

The Board contends that Royal lacks standing because he does not qualify for active

football benefits.  That is, it argues that timely receipt of a proper SPD would not have made any

difference in the amount of benefits Royal received, and so he has not suffered an injury in fact.

The Court disagrees.

Section 102 of ERISA creates an independent, judicially enforceable right of plan participants to receive an SPD that complies with its requirements.  A plan participant has a concrete and particularized interest in being informed about their rights under the plan, even if they could not use that knowledge to obtain higher benefits.  The Supreme Court has consistently held that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute."  *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998); s*ee, e.g.*, *id.* (injury in fact where lobbying organization failed to disclose donor list as required by Federal Election Campaign Act); *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989) (injury in fact where agency failed to disclose document subject to disclosure under Federal Advisory Committee Act); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–374 (1982) (injury in fact where landlord failed to provide information about the availability of rental housing to Black renter as required by the Fair Housing Act); *cf. United States v. Richardson*, 418 U.S. 166, 174 (1974) (no standing where taxpayer sought access to CIA expenditure data directly under the Appropriations Clause).  Royal's injury is even clearer than those in the disclosure cases, because ERISA creates an obligation to furnish information to the plan participants whose rights it directly affects, not to the public at large.

The Board points to a line of cases in which the Second Circuit has held that class representatives lacked standing to seek a monetary award for ERISA violations that did not personally affect them.  *See Kendall*, 561 F.3d at 119; *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 200 (2d Cir. 2005).  Those cases differ from Royal's in two important respects.  First, the class representatives in *Kendall* and *Central States* sought restitution and disgorgement of profits, but insisted they need not show any individual loss.  *See Kendall*, 561 F.3d at 119–20; *Central States*, 433 F.3d at 200.

6

Second, their claims were for a breach of a fiduciary duty that they conceded did not affect them personally.  *See Kendall*, 561 F.3d at 120–21; *Central States*, 433 F.3d at 185.  Both cases agreed with the Third Circuit that—unlike where a class representative seeks restitution or disgorgement for losses suffered only by absent class members—a plan participant need not show pecuniary loss to seek injunctive relief to enforce a statutory disclosure obligation.  *See Kendall*, 561 F.3d at 120–21 (citing *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 456 (3d Cir. 2003)); *Central States*, 433 F.3d at 199–200 (same).  Royal, obviously, does not seek restitution or disgorgement on behalf of absent class members (there are none) or even on his own behalf. Rather, he seeks various declaratory and injunctive relief related to the Board's alleged failure to provide an intelligible SPD to him, personally.  Under the Supreme Court's disclosure cases, *Kendall*, and *Central States*, that is enough to plead an Article III injury.

### B.     Royal's Disclosure-Related Claims Are Time-Barred

Section 413 of ERISA, 29 U.S.C. § 1113, requires that a plaintiff commence any action for breach of fiduciary duty within the earlier of six years after the date of violation or three years after the date on which the plaintiff had actual knowledge of the violation, except that in the case of concealment or fraud the plaintiff has six years from discovery of the violation.

ERISA does not set a limitations period for claims not covered by § 413.  Instead, courts look to "the most nearly analogous state limitations statute."  *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Ben. Plan*, 698 F.2d 593, 598 (2d Cir. 1983).  The Second Circuit has not decided what limitations period applies to claims based on a failure to provide an SPD.  *See Osberg v. Foot Locker, Inc.*, 555 F. App'x 77, 80 (2d Cir. 2014); *see also Brown v. Rawlings Fin. Servs., LLC*, 868 F.3d 126, 128, 131 (2d Cir. 2017) (holding that courts must consider the "characteristic features" of a particular type of ERISA claim to

7

determine the most analogous state law, and applying one-year limitations period to forfeiture claim under ERISA § 502(c)(1)).  However, following the Supreme Court's holding in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), that SPDs are not plan documents enforceable in contract, district courts in this circuit have uniformly held that New York's three-year limitations period for statutory violations applies.  *See, e.g.*, *Hudson v. Nat'l Football League Mgmt. Council*, No. 18-cv-4483 (GHW) (RWL), 2019 WL 5722220, at *23 (S.D.N.Y. Sept. 5, 2019), *adopted as modified*, 2019 WL 4784680 (Sept. 30, 2019); *Caufield v. Colgate-Palmolive Co.*, No. 16-cv-4170 (LGS), 2017 WL 744600, at *5 (S.D.N.Y. Feb. 24, 2017); *Osberg v. Foot Locker, Inc.*, 907 F. Supp. 2d 527, 533 (S.D.N.Y. 2012).  Though the result would be unchanged even applying the longer limitations period for breach of contract, the Court agrees with these cases and will follow them.

Royal's claim that the Board failed to provide him a copy of the SPD in connection with his application for benefits in 2000 falls well outside the applicable limitations periods for both a violation of statutory disclosure requirements and a breach of fiduciary duty.  By his own allegations, Royal was aware that he had not received a copy of the SPD "at the time of the original application for disability benefits."  FAC ¶ 69.  The three-year limitations period therefore began to run from that date and expired in 2003.

Royal fails to plausibly allege that the Board engaged in fraud or concealment so as to trigger the lengthier limitations period for breaches of fiduciary duty in the case of fraud.  He baldly asserts that the Board "intentionally and fraudulently concealed the Plan and summary plan description."  FAC ¶ 10.  However, apart from the allegation that Royal never received a copy of the SPD in connection with his 2000 application, he alleges no facts supporting an inference that such failure was deliberate or fraudulent.  Taking as true all plausible allegations

in the complaint and drawing all reasonable inferences in his favor, the lengthier limitations period for cases of fraud does not apply and, even if it did, it would have run in 2006.

Royal contends that the limitations period should run only from when he became aware of the Board's interpretation of the terms "clear and convincing evidence" and "changed circumstances" following his application for reclassification in February 2016. *See* Plf. Br., Dkt. No. 29, at 17. The Court disagrees. Royal alleges that the relevant failure of disclosure occurred in 2000 and that, after his initial benefits determination, he was effectively "locked in" to the football degenerative designation. FAC ¶ 62; *see also id.* ¶ 53 ("Plaintiff was injured by not being provided an SPD in 2000 when he applied for disability benefits because he did not have information that would help him apply for the correct benefits he was entitled to under the Plan."); *id.* ¶ 59 ("Plaintiff has been harmed by not having these definitions at the time of his original application for benefits because he did not know that he would be prevented from applying for a higher tier of benefits because his total and permanent, although debilitating and what forced him to retire from the NFL, has not changed as the Retirement Board requires."); *id.* ¶ 69 ("The Board Defendants breached their strict fiduciary duties under ERISA § 404(a) by intentionally and fraudulently concealing the 1995 Plan from Plaintiff at the time of the original application for disability benefits and by ensuring that he never received a copy of the 1995 Plan . . . ."). Moreover, as another court in this district has noted in finding that nearly identical claims were time-barred, the Board's interpretation of these terms was a matter of public record—and the subject of a published court opinion—no later than 2011. *See Hudson*, 2019 WL 5722220, at *23; *see also Boyd v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, 796 F. Supp. 2d 682, 693 (D. Md. 2011) (holding that the Board's interpretation of the NFL player retirement plan was reasonable).

Royal's grievance here is with a determination of disability benefits nearly twenty years ago.  His claims should have proceeded, if at all, long before now.  Royal offers only one, strained path to a timely claim: starting with the date he learned of the Board's interpretation of "clear and convincing evidence" and "changed circumstances," and then applying the statute of limitations for a breach of fiduciary duty in the case of fraud.  But Royal's only allegations of fraud (allegations the Court, in any event, does not find plausible) relate to the failure to mail him an SPD in 2000, not the Board's interpretation of these terms.  Taking as true all plausible allegations in the complaint and drawing all reasonable inferences in his favor, Royal's disclosure claims and related breach-of-fiduciary duty claims are untimely.

### C.      Royal Has Abandoned His Remaining Claims

Royal does not defend his remaining claims in his opposition to the Board's motion to dismiss.  The Court agrees with the Board that Royal's fourth claim, seeking a declaration that a 2017 amendment to the plan is void, fails to meet the requirements of Federal Rule of Civil Procedure 8 because it is unintelligible.  Royal does not provide a copy of that amendment, any explanation of its contents, or any basis on which to conclude he has a legal right to relief.  The Court further agrees with the Board that Royal's fifth claim, seeking a declaration that the plan's limitation period is void, is untimely.  The Court also doubts that this claim is independently actionable.  In light of Royal's apparent abandonment of these claims, the Court dismisses them, too.

### D.      Amendment Would Be Futile

Consistent with this Court's individual rules, the Court allowed Royal an opportunity to amend his complaint to attempt to remedy any defects made apparent by the Board's motion to dismiss, and he did so.  Royal has not requested leave to amend again.  The Court also finds that

any further amendment would be futile, because Royal's claims are plainly time-barred.  The

Court therefore denies leave to amend.  *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d

Cir. 2013).

## Conclusion

Royal's claims rest on an alleged failure to mail him a summary of his retirement plan in

2000.  He did not bring suit until July 2019.  By any plausible measure, his claims are untimely.

The Court therefore GRANTS the Board's motion to dismiss (Dkt. No. 16) and dismisses all

claims with prejudice.  The Clerk of Court is respectfully directed to close the case.


SO ORDERED.


Dated: November 20, 2020
       New York, New York        _____
                                            ALISON J. NATHAN
                                         United States District Judge